JULIO CIRILO OCASIO, demandante y apelado, *v.* SAN JUAN DOCK CO., INC., demandada y apelante, y ROYAL INDEMNITY CO., tercera demandada y apelada.

Número 10978.

*Sometido:* 1 de febrero de 1954. *Resuelto:* 12 de febrero de 1954.

*Frank Antonsanti* y *Francisco González, Jr.,* abogados de la apelante; *Luis Blanco Lugo* y *José A. Suro,* abogados de la tercera demandada y apelada; *Charles H. Juliá,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Julio Cirilo Ocasio radicó una demanda de daños y perjuicios en el antiguo Tribunal de Distrito de Humacao contra la corporación San Juan Dock Co., Inc., alegando que el día 4 de marzo de 1948, y en Vieques, Puerto Rico, un empleado de la demandada, mientras manejaba un tractor para abrir carreteras ("Bulldozer"), negligentemente levantó y dejó caer la cuchilla de dicho artefacto mecánico, cayendo la cuchilla sobre el cuello de Julio Antonio Cirilo, hijo del demandante, mientras Julio Antonio trataba de arreglar una pieza de esa máquina, y que con motivo del accidente Julio Antonio murió instantáneamente. La demandada San Juan Dock Co. radicó entonces una "Demanda de Terceros", en la que alegó que para el 4 de marzo de 1948 la San Juan Dock tenía un contrato de carga ("stevedoring") para efectuar la carga y descarga de todos los transportes del ejército de los Estados Unidos; que para dicha fecha estaba en toda su fuerza y vigor un contrato de seguro entre la San Juan Dock y la entidad Royal Indemnity Co. (a la cual nos referiremos como la Royal), tercera demandada, para cubrir los riesgos de responsabilidad pública hasta los límites de $5,000 para cada persona y $10,000 por cada accidente, cubriendo la responsabilidad legal de la San Juan Dock en las operaciones de carga y descarga bajo dicho contrato y que de acuerdo con los términos y condiciones del contrato de seguro la tercera demandada, o sea, la Royal, venía obligada a responder por las reclamaciones contenidas en la demanda del caso de autos. Solicitó la San Juan Dock que se dictase sentencia contra la Royal "por todas las cantidades hasta la suma de $5,000 que pueda recobrar el demandante de la demandada tercera demandante."

La Royal presentó entonces una moción para que se dictase sentencia sumaria a su favor, acompañando una declaración jurada de Luis Colberg, Secretario Tesorero Auxiliar del Agente General de la Royal en Puerto Rico, en que exponía que para la fecha del accidente la póliza en vigor no cubría operaciones realizadas en la isla de Vieques y solamente cubría operaciones de carga y descarga que se efectuaran en el muelle núm. 7 de San Juan, en la parada 2½, Avenida Pershing, de Puerta de Tierra, y que no fué hasta el día 12 de marzo, de 1948 que la póliza fué ampliada para cubrir operaciones en la isla de Vieques. A tal declaración jurada se acompañó además una copia certificada de la póliza. A esa póliza se acompañó posteriormente el endoso o ampliación del 12 de marzo.

La San Juan Dock formuló una moción de oposición a la moción sobre sentencia sumaria, alegando que de la faz de la póliza "aparece claramente el derecho o causa de acción de la San Juan Dock contra dicha compañía aseguradora en este caso y aparece además que dicha póliza no tiene límites geográficos." La San Juan Dock radicó una contra-declaración jurada, que dice lo siguiente:

"Yo, Pedro Feliciano, Jr., mayor de edad, casado, industrial y vecino de San Juan, Puerto Rico bajo juramento declaro:

"Que para el año 1948 estaba directamente a cargo de llevar a cabo los trabajos de carga y descarga de los barcos transportes del ejército de los Estados Unidos bajo contrato concertado entre la San Juan Dock Company y el Gobierno de los Estados Unidos. Como consecuencia de ello tengo conocimiento de los hechos relacionados con el accidente que se relaciona en el pleito de epígrafe y la póliza de seguro expedida a la San Juan Dock Company para cubrir los riesgos de responsabilidad pública en dichas operaciones.

"Que a los fines de cubrir los riesgos de responsabilidad pública en sus operaciones de 'stevedoring' bajo el contrato referido la San Juan Dock Company solicitó y obtuvo de la Royal Indemnity Company la póliza de seguro que se une a la moción sobre sentencia sumaria radicada en el pleito de epígrafe. *Como se des-*

*prende de dicha póliza* se cubre el riesgo que se denomina 'stevedoring' y las primas pagadas a la aseguradora se basan en el montante de las nóminas en las operaciones de 'stevedoring' sin mención de límites geográficos. Las nóminas utilizadas para computar las primas de seguro a pagar no se limitan a jornales pagados en ningún sitio determinado sino más bien a la nómina del riesgo de 'stevedoring' dondequiera que se lleve a cabo esa operación. Como cuestión de hecho la asegurada durante el 'policy period' año 1948 pagó primas sobre todas sus operaciones 'stevedoring' bajo el contrato referido que incluyen operaciones de 'stevedoring' en Vieques, Ensenada Honda, Army Terminal, Cataño, y San Juan, Puerto Rico, y demás sitios y puertos donde el ejército requería los servicios de 'stevedoring' bajo el contrato referido. Al solicitarse la póliza referida se explicó claro a los agentes de la compañía aseguradora del contrato entre la asegurada y el Gobierno de los Estados Unidos indicando que aunque la parte sustancial de dichos trabajos se llevarían a cabo en San Juan y el Army Terminal podrían surgir casos donde el ejército exigiría que el trabajo se verificase en otro puerto de Puerto Rico.

"A los pocos días del accidente que se relaciona en la demanda y conforme a los términos de la póliza se notificó del accidente a la compañía aseguradora quien entonces alegó que el accidente no estaba cubierto. En vista de esta actitud de la compañía aseguradora y para evitar futuras controversias la asegurada San Juan Dock Company pidió un endoso con mención específica de Vieques.

"En San Juan, Puerto Rico. Febrero 12, 1953.

"(Fdo.) Pedro Feliciano, Jr."

El 5 de marzo de 1953 la sala de Humacao del Tribunal Superior dictó una resolución declarando sin lugar la moción de sentencia sumaria, en vista de su criterio de que había "hechos controversiales que deben ser dilucidados en un juicio plenario." Posteriormente, y a moción de la Royal, el tribunal de Humacao reconsideró su resolución y dictó una sentencia sumaria declarando sin lugar la "demanda de tercero" y exonerando de responsabilidad a la Royal, en vista de que, de acuerdo con la póliza, Vieques no era uno de los sitios especificados en ella, quedando ese criterio ratificado, según el Tribunal, por el hecho de que hubo necesidad de hacer una

ampliación o endoso el 12 de marzo de 1948, después del accidente, que cubría a Vieques y a otros sitios, y que, por lo tanto, no había hecho alguno en controversia.

La San Juan Dock ha apelado de la sentencia sumaria para ante este Tribunal y ha señalado los siguientes errores:

"1. El Tribunal Superior de P. R., Sección de Humacao, cometió error al resolver que el contrato de seguro (póliza) existente entre San Juan Dock Co., Inc., y la Royal Indemnity Co., *indicaba como sitio de operación la parada 2½, Avenida Pershing, San Juan, P. R., Muelle No. 7.* (Bastardillas de la apelante.)

"2. El Tribunal Superior de P. R., Sección de Humacao, cometió error al tomar en consideración al resolver este caso el endoso de 12 de marzo de 1948.

"3. El Tribunal Superior de P. R., Sección de Humacao, cometió error al resolver que el accidente ocurrido el 4 de marzo de 1948 no estaba cubierto por la póliza de la Royal Indemnity Co.

"4. El Tribunal Superior de P. R., Sección de Humacao, cometió error al declarar con lugar la moción de sentencia sumaria existiendo una genuina controversia en relación con los hechos alegados en el *affidavit* de méritos acompañado a la moción y el acompañado a la oposición."

Los errores señalados plantean el problema de si la póliza de seguro cubría accidentes ocurridos en Vieques, y si hay alguna controversia de hecho sobre tal extremo. La póliza redactada y otorgada en el idioma inglés, en su parte relevante, identifica el sitio o propiedad cubierta por la póliza, o sea, el sitio donde pudiesen ocurrir accidentes cubiertos por la póliza, en la forma siguiente:

"Location of Premises: Stop 2½, Pershing Ave., San Juan, Puerto Rico."

La apelante alega, sin embargo, que al dorso de la póliza existen disposiciones que amplían el sitio ("premises") a ser cubierto, en tal forma que incluyen la isla de Vieques. Se dice, al dorso de la póliza lo siguiente:

"Definitions: (a) Premises. The unqualified word 'premises' whenever used in this policy shall mean (1) the prem-

ises designated in the declaration and other premises used in connection with the business operations insured by the policy, including buildings and structures thereon and the ways immediately adjoining and (2) when a territory is designated in the declaration in addition to a specific location, places within said territory while used by or on behalf of the insured, except public ways used in common with others."

También se dispone lo siguiente:

"Definition of Hazards. Division 1. Premises.—Operations. The ownership, maintenance or use of premises, and all operations necessary or incidental thereto."

En una póliza de seguro como la envuelta en el caso de autos, la localización o descripción del sitio, establecimiento o propiedad ("premises") donde pudiese ocurrir el accidente constituye un elemento esencial del contrato de seguro y un factor primordial en la fijación de la cuantía de las primas a ser pagadas, y, por lo tanto, debe entenderse que la póliza cubre solamente el sitio o sitios mencionados o especificados en la póliza, y cubre solamente los accidentes ocurridos en ese sitio o en esos sitios. (29 Am. Jur. 524 a 526, sec. 668, 669 y casos allí citados; *Barrett* v. *Freed*, 35 A.2d 180, en que se identifica esa doctrina como "regla universal"; *cf.* Couch, *Cyclopedia of Insurance Law*, sec. 767; Richards on *Insurance*, sec. 521, y, por analogía, anotaciones en 15 A.L.R. 2d 1028.)

■ En el caso de autos, se identificó la localización del sitio como la Parada 2½, Pershing Ave., San Juan, Puerto Rico. Es cierto que al dorso de la póliza se hace referencia a otros sitios usados en conexión con el funcionamiento del negocio asegurado, pero inmediatamente se dice: "incluyendo edificios y estructuras sobre tal sitio, y las vías inmediatamente contiguas". De ello surge la inferencia al efecto de que fué la intención de las partes al referirse a otros sitios, de que ellos fuesen aquéllos que estuviesen conectados razonablemente, en forma física o geográfica, con el sitio específico

mencionado en la póliza, o sea, que estuviesen razonablemente contiguos a ese sitio. (Por analogía, véase Couch, ob. cit., sec. 767, en donde se citan casos, en cuanto a seguros contra escalamientos, que limitan el alcance del término "premises". El mismo criterio restrictivo prevalece en Nueva York, en cuanto a la expresión "on the described premises", usada en la Ley de Seguros contra Incendios. Richards, ob. cit., sec. 521.) La realidad de esa intención quedó comprobada por el hecho de que el 12 de marzo de 1948, después de haber ocurrido el accidente aquí envuelto, las partes aprobaron una *extensión* de la póliza (de acuerdo con los propios términos de la ampliación), para que cubriese accidentes en Vieques, en otros sitios especificados y "en cualquier sitio en la Isla de Puerto Rico". Se indicó que tal extensión se hacía en consideración a una prima adicional de $610 ("in consideration of an additional premium of $610"). Ya hemos visto que la prima es, en parte, función del sitio ("premises") cubierto, y su cuantía se fija en consideración en parte, de la localización de ese sitio. Al ampliarse los sitios cubiertos y al aumentarse la prima al mismo tiempo, ello implica que la prima menor anterior era función del sitio limitado mencionado en la póliza.

██ Estamos conscientes de que se trata aquí de una sentencia sumaria, y que debemos considerar la aplicabilidad a este caso de la regla general al efecto de que no procede una sentencia sumaria cuando existe una controversia real sobre los hechos. Pero el problema planteado en este caso se refiere a la interpretación de algunas cláusulas de un contrato o póliza de seguro. Tal como se indica en Moore's *Federal Practice*, Tomo 6, pág. 2221, sec. 56.17 (31), notas 13 y 17, segunda edición, bajo el subtítulo de "Seguros", cuando la responsabilidad bajo una póliza de seguro depende de la interpretación de una cláusula, ello envuelve generalmente una cuestión de derecho, que no derrota una sentencia sumaria. Véanse además, al mismo efecto, los casos de *Bull* v. *Sun Life Assur. Co.*, 141 F.2d 456; y *Hooker* v. *New York Life Ins.*

*Co.*, 66 F. Supp., 313, 9 F.R.S. 56 C. 54, Case 2; *Fink* v. *Northwestern Mutual Life Ins. Co.* v. *Wolf*, 29 F. Supp. 972 2 F.R.S. 56 C. 41, Case 4; *Whiteman* v. *Federal Life Ins. Co.*, 1 F.R.S. 56 C. 41, case 8. Por vía de excepción a esa regla, prevalece también la doctrina, aplicable a mociones de sentencias sumarias en casos que envuelven toda clase de contratos, al efecto de que determinada cláusula de un contrato es ambigua, convirtiendo en admisible prueba oral o extrínseca ("parol-evidence") en torno a la comprobación de la intención de las partes, si esa prueba da lugar a una controversia real sobre los hechos, no procedería una sentencia sumaria, aunque sí podría ser dictada una sentencia sumaria si las cláusulas en cuestión no son ambiguas. 6 Moore's ob. cit., sec. 56.17 (11) y 56.17 (43), pág. 2187, 2235.

Las cláusulas que hemos transcrito de la póliza en cuestión no son ambiguas, y es clara la intención de las partes en cuanto a la localización del sitio cubierto por la póliza, considerando especialmente el endoso o extensión posterior de la póliza, que ya hemos mencionado. En cuanto a la declaración jurada de Pedro Feliciano, Jr., presentada por la San Juan Dock en oposición a la moción de sentencia sumaria, se dice, en ella, en síntesis, lo siguiente:

(1) *"Como se desprende de dicha póliza* se cubre el riesgo que se denomina 'stevedoring' y las primas pagadas a la aseguradora se basan en el montante de las nóminas en las operaciones de 'stevedoring' sin mención de límites geográficos. Las nóminas utilizadas para computar las primas de seguro no se limitan a jornales pagados en ningún sitio determinado sino más bien a la nómina del riesgo de 'stevedoring' donde quiera que se lleve a cabo esa operación. Como cuestión de hecho la asegurada durante el 'policy period' año 1948 pagó primas sobre todas sus operaciones 'stevedoring' bajo el contrato referido que incluyen operaciones . . . . en Vieques, etc."

De la póliza no surge que las primas se pagasen a base del montante de las nóminas, sin límites geográficos. Por el con-

trario, en la póliza se establecen límites geográficos y en la extensión o endoso se hace consignar un aumento en las primas en consideración a la ampliación en la localización de los sitios. La parte que hemos transcrito de la declaración jurada de Pedro Feliciano, Jr., envuelve, no solamente una interpretación personal de la póliza, sino la exposición de hechos incompatibles con o antagónicos a las cláusulas de la póliza y de su extensión o endoso. Sería, por lo tanto, inadmisibles, bajo el "parol-evidence rule".

■ (2) También se indica en la declaración jurada de referencia que "al solicitarse la póliza referida se explicó claro a los agentes de la compañía aseguradora del contrato entre la asegurada y el Gobierno de los Estados Unidos, indicando que aunque la parte sustancial de dichos trabajos se llevarían a cabo en San Juan y en el Army Terminal, podrían surgir casos donde el ejército exigiría que el trabajo se verificase en otro puerto de Puerto Rico". Ahora bien, el hecho de que se hiciera tal indicación a la Royal, no implica que ella haya consentido en tal ampliación de los límites geográficos o que tal ampliación fuese parte de los términos y condiciones de la póliza. En la póliza en sí se especifica el sitio cubierto. Tal cláusula no fué variada en virtud de tales alegadas indicaciones. Por el contrario, se consideró necesario al variar tal cláusula, y ampliar los sitios cubiertos, después de haber ocurrido el accidente, y en virtud del pago de una prima mayor. Las cláusulas de definición que aparecen impresas al dorso de la póliza son usuales en esta clase de pólizas, y no surge que su redacción se haya debido o haya quedado afectada por las indicaciones alegadas en la declaración jurada.

■■ Considerando otro aspecto de este caso, la sección 175 de nuestra Ley de Seguros, tal como dicha sección quedó enmendada por la Ley núm. 19, aprobada el 15 de abril de 1929, dispone que en el caso de que una póliza de seguro se hubiere expedido para beneficiar a una tercera persona, la acción para reclamar la indemnización que proceda podrá

940

presentarse conjuntamente contra el asegurado y la compañía aseguradora. La demanda en este caso no se presentó conjuntamente contra el asegurado y la compañía aseguradora, pero el asegurado actuó válidamente a tono con la Regla 14 de Enjuiciamiento Civil, que autoriza a un demandado, en casos como el de autos, a incluir en el procedimiento a una tercera parte como tercero demandado. *Cf. García* v. *Gobierno de la Capital*, 70 D.P.R. 333; *García* v. *Gobierno de la Capital*, 72 D.P.R. 138. Aunque generalmente la obligación de la compañía aseguradora fuese subsidiaria, ella tenía derecho a demostrar, previamente y antes de comprobarse la responsabilidad del asegurado, que ella no era responsable en virtud de los términos de la propia póliza.

En virtud de lo expuesto, actuó correctamente el tribunal a quo al dictar la sentencia sumaria. *Debe confirmarse la sentencia apelada.*