Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| PEERLESS OIL & CHEMICALS, INC.<br><br>Demandante-Apelados<br><br><br>Vs.<br><br><br>CARLA CAMIR CANCEL CARDONA, FULANO, ABC<br><br>Demandados-Apelantes | KLAN202400706 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. PO2024CV00841<br><br>Sala: 601<br><br>Sobre: SENTENCIA DECLARATORIA; INJUNCTION, CUMPLIMIENTO ESPECÍFICO DE CONTRATO |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Comparece la parte apelante, la señora Carla Camir Cancel Cardona (en adelante, Sra. Cancel Cardona o apelante), a través del presente recurso de apelación, y nos solicita la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce el 12 de julio de 2024.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la Reconvención presentada por la Sra. Cancel Cardona y declaró Ha Lugar la *Moción Solicitando Desestimación de la Reconvención* y la *Moción Solicitando Sentencia por las Alegaciones*, presentadas por *Peerless Oil & Chemicals Inc.*, (en adelante, PO&C o apelado). En consecuencia, dictó *Sentencia* desestimando la reconvención presentada por la Sra. Cancel Cardona y le ordenó el cumplimiento con la renovación del Contrato de Venta, Suministro y Autorización de Uso de Marca (en adelante,

---

[1] Notificada el 13 de julio de 2024.

Número Identificador

SEN2024 _____

*Contrato*), incluyendo específicamente el continuo uso y despliegue de la marca, según solicitado en la *Demanda*.

Por los fundamentos que exponemos a continuación, se *revoca* el dictamen apelado.

**I.**

El presente recurso tiene su génesis el 28 de marzo de 2024 cuando PO&C presentó una *Demanda de Sentencia Declaratoria, Injunction Preliminar y Permanente.* A través de esta, alegó que suscribió un *Contrato* con la Sra. Cancel Cardona el 2 de julio de 2014.[2] El referido *Contrato* tendría una duración de ocho (8) años. Posteriormente, el 11 de junio de 2015 las partes acordaron enmendar el *Contrato* para establecer que PO&C había hecho mejoras a la estación de gasolina (en adelante, la Estación), propiedad de la Sra. Cancel Cardona localizada en el pueblo de Lajas. A cambio de las referidas mejoras acordaron que se extendería el término original del *Contrato* a diez (10) años, a partir de la fecha del contrato original, hasta el 2 de julio de 2024. Al acercarse la fecha de terminación en el 2023, PO&C propuso un nuevo acuerdo, sin embargo, la Sra. Cancel Cardona no aceptó la proposición. Ello causó que optaran unilateralmente por renovar el *Contrato,* a tenor con la cláusula de renovación automática estipulada en el acuerdo entre las partes extendiendo la duración de este hasta el 1ro de agosto de 2029. No obstante, los esfuerzos de insistir en la renovación y reabrir el diálogo fueron contrarrestados por la Sra. Cancel Cardona quien hizo acusaciones por incumplimiento contractual relacionadas con un asunto ambiental.

Establecido el impasse, PO&C acudió al tribunal solicitando que se emitiera una sentencia declaratoria que: 1) Confirmara la validez y efectividad del *Contrato* firmado el 2 de julio de 2014 entre

---

[2] Apéndice III del recurso, en las págs. 22-65.

PO&C y la Sra. Cancel Cardona, incluyendo su cláusula de renovación automática; 2) Declarara expresamente que la Sra. Cancel Cardona se encontraba en incumplimiento contractual por rehusarse a reconocer y acatar la renovación automática del contrato, notificada oportunamente por PO&C, conforme a los términos y condiciones pactados por las partes; 3) Ordenara a la Sra. Cancel Cardona a cumplir con todas las obligaciones derivadas del contrato renovado, asegurando así la continuidad del suministro y la relación comercial bajo los términos renovados, esto último, sin requerir trámite adicional alguno por parte de PO&C. Adujo que su petición se fundamentaba en la necesidad de proteger sus derechos contractuales y evitar un perjuicio económico inminente. También sostuvo que la decisión de la Sra. Cancel Cardona de no renovar el contrato fue hecha con la intención de eliminar cualquier marca y señalización de Ecomaxx en la Estación, lo cual constituía una violación directa a los acuerdos estipulados en el *Contrato*.

Sobre este asunto alegó que la eliminación de la marca le causaría un daño irreparable al erosionar la reputación, identidad y lealtad del cliente a la marca, lo cual estableció que no podía ser compensado únicamente con daños monetarios. Es por esto que, con motivo de violación al Lanham Act, le solicitó al tribunal lo siguiente: 1) Que emitiera una orden de Injunction preliminar y, posteriormente permanente, prohibiéndole a la Sra. Cancel Cardona remover la marca Ecomaxx y cualquier señalización asociada, y prevenir cualquier otra acción de competencia desleal hasta la terminación del *Contrato* el 1 de agosto de 2029; 2) Que ordenara el cumplimiento del *Contrato* según los términos originales, incluyendo el uso apropiado de la marca y la cláusula de renovación automática, asegurando la protección bajo el Lanham Act; 3) Que concediera cualquier otro remedio justo y apropiado, incluidos, pero no limitados a los daños por las pérdidas sufridas debido a las

acciones de la Sra. Cancel Cardona. También, solicitó un Injunction preliminar que le prohibiera a esta última remover los rótulos y señalización de PO&C y que se abstuviera de comprar combustible de otros suplidores hasta la conclusión del caso. Finalmente, solicitó compensación por daños y perjuicios por el incumplimiento contractual de la Sra. Cancel Cardona.

El TPI emitió una *Orden* señalando una Vista Evidenciaria para el 3 de mayo de 2024. Posteriormente, el 26 de abril de 2024, la Sra. Cancel Cardona presentó su *Contestación a la Demanda de Sentencia Declaratoria, Injunction Preliminar y Permanente y Reconvención.*[3] A través de esta, negó esencialmente las alegaciones de la *Demanda,* y solo aceptó la firma del *Contrato*. No obstante, adujo que la mera existencia del *Contrato* no hacía exigible la renovación automática obligatoria. Levantó como defensas afirmativas que la *Demanda* dejaba de exponer hechos suficientes que ameritaran concesión de un remedio. Del mismo modo, argumentó que el *Contrato* no correspondió a una negociación justa, honesta, ni de buena fe por parte de PO&C, acordada en igualdad de condiciones. Esbozó que la intención de las partes al suscribir el acuerdo no era la renovación automática y mencionó que PO&C redactó el contrato de adhesión intencionalmente con la falsa impresión de que este era renovable unilateralmente.

En su reconvención, la Sra. Cancel Cardona expuso que el *Contrato* no fue firmado conforme a las disposiciones del Petroleum Marketing Practices Act (PMPA), y que las partes no habían acordado un contrato de operación para la Estación. Por otro lado, reconoció haber firmado la enmienda del *Contrato* y explicó que la misma se hizo para llevar a cabo mejoras en la Estación a cambio de extender el término del contrato original, a partir del 2 de julio de 2014. Alegó

---

[3] Apéndice IX del recurso, en las págs. 174-225.

que PO&C incumplió con el *Contrato* y que cometió actos de negligencia al no ejercer propiamente su deber de cuidado al instalar un tanque de combustible en la Estación que resultó defectuoso y causó un derrame el 12 de agosto de 2015. Sobre este incidente, arguyó que PO&C evadió su responsabilidad ambiental y legal, y ocultó su participación en la instalación del tanque defectuoso. En atención al accidente y al alegado incumplimiento contractual, solicitó los siguientes remedios: 1) Una cantidad no menor de un millón quinientos mil dólares ($1,500,000.00) en daños económicos y ambientales en su propiedad; 2) Una cantidad no menor de treinta y cinco mil dólares ($35,000.00) en honorarios de abogado; 3) La declaración de incumplimiento por parte de PO&C y una correspondiente recisión o resolución del contrato; 4) La determinación mediante sentencia de que PO&C respondía en derecho por la limpieza ambiental total de su propiedad conforme a sus actuaciones y culpa; 5) La determinación mediante sentencia que PO&C respondía en derecho ante la Junta de Calidad Ambiental (JCA) y Recursos Naturales de Puerto Rico (DRNA) por sus actuaciones; 6) La determinación mediante sentencia imponiéndole a PO&C a llevar a cabo y terminar toda remediación ambiental necesaria y requerida para limpiar la propiedad de la Sra. Cancel Cardona de conformidad con sus actuaciones y culpa; 7) Cualquier otro remedio procedente en ley, sin limitarse al incumplimiento de contrato, el asunto ambiente descrito y todo daño o perjuicio sufrido.[4]

El 30 de abril de 2024, PO&C presentó una ***Moción Solicitando la Desestimación de la Reconvención.***[5] Como marco legal, utilizó lo establecido bajo la Regla 10.2 (5) de Procedimiento

---

[4] A solicitud de Orden del TPI, el 26 de abril de 2024, la Sra. Cancel Cardona presentó una *Moción en Cumplimiento de Orden Notificando por Segunda Ocasión Contestación a la Demanda y Reconvención.* Según se establece en la moción, la radicación inicial no era legible. Apéndice del recurso XVII, en las págs. 357-410.

[5] Apéndice XIX del recurso, en las págs. 413-425.

Civil bajo el fundamento que la acción incoada por la Sra. Cancel Cardona a través de su reconvención no exponía una reclamación que justificara la concesión de un remedio.[6] Expuso que las alegaciones de la reconvención se centraban en la ocurrencia de un incidente ocurrido en el 2015, causado por una tercera empresa. Arguyó que las imputaciones de responsabilidad a PO&C se enfocaban en la titularidad del tanque. Sin embargo, adujo que del acuerdo de amortización se desprendía que la Sra. Cancel Cardona era la propietaria del tanque en beneficio de la Estación. Por otro lado, y como argumento principal para su moción de desestimación, argumentó que la reclamación de daños y perjuicios contra PO&C estaban vinculadas a la instalación de un tanque hace diez (10) años. Por lo tanto, esgrimió que la causa de acción incoada en la reconvención se encontraba prescrita.

A su vez, esbozó que según el Artículo 8 del *Contrato*, la Sra. Cancel Cardona asumió todo el riesgo y la responsabilidad en la operación de la Estación, así como de sus componentes y equipos. Alegó que, de acuerdo con lo pactado, la Sra. Cancel Cardona debía indemnizar a PO&C por cualquier reclamación que surgiera sobre el manejo de la propiedad, estableciendo así la independencia de ambas partes en sus operaciones comerciales, según el *Contrato*. Del mismo modo, afirmó que la Sra. Cancel Cardona no presentó evidencia de haber notificado por escrito a PO&C los alegados incumplimientos contractuales, contrario a lo pactado en el Artículo. 20.1 del *Contrato*.

Por otra parte, con relación a la cláusula de renovación automática, esgrimió que el *Contrato* era específico en cuanto a que PO&C tenía la discreción de renovar el acuerdo por un periodo adicional de cinco (5) años, previa notificación escrita con no menos

---

[6] 32 LPRA Ap. V, R. 10.2 (5).

de treinta (30) días antes de su vencimiento. En atención a esto, planteó que la cláusula de renovación automática era directa y no admitía interpretación. Por lo tanto, solicitó la desestimación total de la reconvención presentada por la Sra. Cancel Cardona y el reconocimiento de la validez y ejecución de los términos contractuales acordados entre las partes.

El 1 de mayo de 2024, PO&C presentó una ***Moción Solicitando Sentencia por las Alegaciones***.[7] En esta, afirmó que ante la falta de controversias medulares, procedía emitir sentencia declaratoria en contra de la Sra. Cancel Miranda y procedía ordenarle el cumplimiento del *Contrato*. El 3 de mayo de 2024, se celebró una Vista Sobre el Estado de los Procedimientos en donde el tribunal hizo constar que no atendería la solicitud de Injunction, sino que se limitaría a atender la solicitud de sentencia declaratoria y de cumplimiento específico de contrato. PO&C informó que el *Contrato* original tenía fecha del vencimiento el 1 de julio de 2024, por lo que solicitó que la vista se celebrara antes de esa fecha.

En lo pertinente al asunto ambiental expuesto por la Sra. Cancel Cardona en la *Contestación a Demanda y Reconvención*, expuso que la referida lo trajo a colación como justificación para que no se renovara el *Contrato*, a pesar de que la causa de acción se encontraba prescrita y no le atribuía responsabilidad directa a PO&C. Igualmente, mencionó que previamente PO&C había objetado la presentación del informe realizado por Caribe Environmental Services por ser prueba de referencia. Mencionó que era precisamente sobre ese documento que la Sra. Cancel Cardona fundamentó su reconvención. Luego de escuchar a las partes, el tribunal le concedió a la Sra. Cancel Cardona hasta el 13 de mayo de 2024 para replicar a la moción dispositiva. De igual forma, el

---

[7] Apéndice XX del recurso, en las págs. 426-445.

tribunal calendarizó la *Conferencia con Antelación a Juicio y Vista Transaccional* para el 26 de junio de 2024, y el *Juicio en su fondo* para el 28 de junio de 2024. Por último, señaló una *Continuación de vista en su fondo* para el 12 y 15 de julio de 2024.

El 14 de mayo de 2024, la Sra. *Cancel Cardona* presentó una *Oposición a 1. Moción en Solicitud de Sentencia por las Alegaciones, y a 2. Moción en solicitud de Desestimación.*[8] Esbozó una lista de veinte (20) hechos incontrovertidos y por los cuales arguyó correspondía ver el juicio en su fondo. Arguyó que mediante una comunicación enviada por Luis R. Vázquez, (Gerente General de PO&C), el 5 de diciembre de 2023, PO&C dejó sin efecto todos y cada uno de los documentos suscritos por las partes, incluyendo el *Contrato.* Arguyó que, la referida misiva concluyó estableciendo que los puntos propuestos en la misma sustituirían cualquier documento anterior a la fecha de envío y que formaría parte de los Acuerdos de Suministros. Asimismo, la comunicación establecía que la propuesta sería válida hasta el 13 de diciembre de 2023. Por otro lado, reiteró su alegación sobre el severo daño ambiental causado por el incidente del 12 de agosto de 2015 y le atribuyó a PO&C la entera responsabilidad de lo ocurrido.

Luego de varias instancias procesales, el 20 de mayo de 2024, PO&C presentó una *Réplica a Oposición.*[9] Alegó que la Sra. Cancel Cardona consideró erróneamente las mociones de PO&C como solicitudes de sentencia sumaria y estableció controversias de hechos que, a su entender, eran inexistentes. Afirmó que, en la oposición a la desestimación, esta última estaba impedida de presentar datos o documentos nuevos que no hayan sido incluidos en la reconvención, ya que al hacer esto estaría enmendado las alegaciones sin autorización. Manifestó no tener la obligación de

---

[8] Apéndice XXXIII del recurso, en las págs. 646-686.
[9] Apéndice XXXV del recurso, en las págs. 693-701.

presentar prueba alguna para sustentar sus alegaciones. *Sobre esto, estableció que el propósito de las mociones de desestimación y de la solicitud de sentencia por las alegaciones era evaluar la suficiencia de las alegaciones y no probar hechos.* Añadió que, la falta de prueba adicional no incluida originalmente en la reconvención y sus anejos causaba que la misma no se tratara como una solicitud de sentencia sumaria bajo la Regla 36 de Procedimiento Civil, sino que se tratara como una moción de desestimación bajo la Regla 10.3. En atención a esto, le solicitó al tribunal que descartara los anejos presentados por la Sra. Cancel Cardona debido a que estos no cumplían con las Reglas de Evidencia en cuanto a autenticidad y pertinencia.

En respuesta, el 23 de mayo de 2024, la Sra. Cancel Cardona presentó una dúplica a la réplica presentada por PO&C. En ella, afirmó que la parte demandante pretendía inducir a error al tribunal con el propósito de evitar ser vinculado al derrame de combustible ocurrido el 12 de agosto de 2015. Alegó que el demandante trató el incidente como uno irrelevante, a pesar de que este último provocó y continuaba provocando daño ambiental severo en el suelo a consecuencia de la negligencia y/o culpa de PO&C. En atención a lo antes expuesto, solicitó que se declarara No ha Lugar la réplica.

Luego de evaluar los argumentos presentados por las partes, el 12 de junio de 2024, el TPI emitió la *Sentencia* que nos ocupa. A través de la referida, declaró No ha Lugar la reconvención presentada por la Sra. Cancel Cardona y declaró Ha Lugar la *Moción Solicitando Desestimación de la Reconvención* y la *Moción Solicitando Sentencia por las Alegaciones*, presentadas por PO&C. Consecuentemente, desestimó la reconvención presentada por la Sra. Cancel Cardona y le ordenó a esta última el cumplimiento de la renovación del *Contrato*, incluyendo específicamente el continuo uso y despliegue de la marca, según solicitado en la *Demanda.*

Inconforme, el 29 de julio de 2024, la Sra. Cancel Cardona acude ante nos mediante el presente recurso de apelación. En el mismo, esboza los siguientes señalamientos de error:

> El TPI ha cometido error al dictar SENTENCIA de 12 de junio de 2024 contrario a derecho.

> El TPI ha cometido error al dictar Sentencia de 12 de junio de 2024 haciendo uso de abuso de discreción.

> El TPI ha cometido error al dictar la SENTENCIA de 12 de junio de 2024 y declarar No Ha Lugar la Reconvención presentada por CANCEL.

> El TPI ha cometido error al dictar SENTENCIA de 12 de junio de 2024 y declarar HA LUGAR la Moción Solicitando Desestimación de la Reconvención y la Moción Solicitando Sentencia por las alegaciones, presentadas por PEERLESS.

El 29 de agosto de 2024, PO&C presentó su correspondiente *Alegato en Oposición*. Luego de evaluar la posición de las partes, el 16 de septiembre de 2024, emitimos una *Resolución* en la que le concedimos a las partes un término de diez (10) días para discutir el alcance de la cláusula de renovación automática según el Artículo 13.3 del *Contrato*. Específicamente, solicitamos que se argumentara si la ejecución o cumplimiento específico de la referida cláusula era obligatorio o si, por el contrario, estaba sujeto al consentimiento de las partes a la luz de las diferentes o nuevas circunstancias que pudieran existir al momento de su activación.

En cumplimiento con nuestra *Resolución,* ambas partes presentaron sus escritos el 25 de septiembre de 2024. PO&C reitera su posición sobre la claridad del texto contractual entre las partes en el Artículo 13.3. Arguye que el intento de invalidar la renovación automática basándose en la misiva de oferta enviada por PO&C el 5 de diciembre de 2023, es improcedente ya que la oferta no fue aceptada. Al no ser aceptada, argumenta que la sustitución o modificación mencionada en la misiva nunca advino a la vida jurídica. Por lo tanto, arguye que la oferta no incidió en los términos

del *Contrato* original entre las partes. Finalmente, repite que el asunto ambiental es irrelevante y menciona que ha sido expresamente vetado por el gobierno y el propio *Contrato*.

Por su parte, la Sra. Cancel Cardona expone que el contrato entre las partes solo tomó en cuenta o hizo alusión expresa sobre los tanques soterrados. Sin embargo, alega que el incidente de derrame de diesel ocurrido el 12 de agosto de 2015 fue causado por la instalación de un tanque defectuoso no soterrado. Es por esto último que, la Sra. Cancel Cardona responsabiliza a PO&C de la contaminación ambiental causada por el referido derrame y alega que continúa sufriendo las consecuencias del incidente. Luego de ocurrido el derrame, ella se comunicó con PO&C y alega que estos le respondieron a través de un correo electrónico el 22 de noviembre de 2022 y le comunicaron que estos asumirían la responsabilidad de toda consecuencia originada por el incidente de derrame, incluyendo la protección del operador de la Estación. De igual forma, menciona que PO&C le dijo que era interés de ellos llevar a cabo la labor de investigación y limpieza en la Estación.

Por otro lado, en cuanto a la Cláusula 13.3 del *Contrato*[10], aduce que el lenguaje de esta no es uno que permite establecer de forma determinante y firme que el contrato será renovado, sino que establece la posibilidad de renovación por parte de PO&C. En atención a esto, resalta la utilización de la palabra "podrá" y la palabra "intención". Del mismo modo, aduce que en el *Contrato* no se pactó ningún consentimiento expreso, ni manifiesto a suscribir un contrato nuevo, mediante renovación, que fuese consentido a

---

[10] Art[í]culo 13.3 <u>Renova[c]i[ó]n autom[á]tica</u>. Este Contrato podr[á] ser renovado autom[á]ticamente por un t[é]rmino adicional de cinco (5) años contados a partir de la fecha de termina[c]ión del mismo, solamente a discreci[ó]n de Peerless. Peerless notificará su inten[c]i[ó]n de renovar el Contrato con notificaci[ó]n escrita del al menos treinta (30) d[í]as con anterioridad a la fecha de vencimiento del Contrato.

ejecutarse en circunstancia absoluta luego de que PO&C notificara su intención de renovarlo.

De otra parte, la Sra. Cancel Cardona enfatiza que el contrato entre las partes no es uno de arrendamiento, sino que es uno de venta y suministro de combustible. Arguye que la figura de renovación automática o tácita reconducción no es de aplicación al contrato entre las partes. Asimismo, establece que su decisión de no renovar el contrato surge por el incumplimiento de PO&C luego de que sus acciones le ocasionaron un daño ambiental a su propiedad y le impuso el deber de responder ante la DRNA y las agencias reguladoras. En síntesis, la Sra. Cancel Cardona establece que la ocurrencia del derrame ambiental de combustible, junto con las conductas engañosas e incumplimientos por parte de PO&C dieron base para que ella haya decidido rechazar continuar la relación comercial entre las partes. Esto último, unido a la evaluación continua que esta hizo de su negocio luego de tomar en consideración los productos y los precios que podía ofrecerle a sus clientes.

Examinado el recurso en su totalidad y con la comparecencia de las partes, procedemos a establecer el derecho aplicable y resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil de Puerto Rico[11], establece que toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva. No obstante, a opción de parte, las siguientes defensas pueden hacerse mediante moción independiente debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la

---

[11] R.P. CIV. 10, 32 LPRA Ap. V, R. 10.2.

persona; (3) Insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.[12]

El Tribunal Supremo de Puerto Rico ha reiterado que, ante una moción de desestimación, el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[13] Por lo tanto, el tribunal debe conceder la desestimación cuando existan circunstancias que permitan a los tribunales determinar que la demanda carece de todo tipo de méritos o que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[14] Según surge de lo anterior, el inciso cinco (5) de la Regla 10.2 (5) provee que no se deberá desestimar la demanda a menos que surja con toda seguridad que, sin importar los hechos que pudiese probar, la parte demandante no merece remedio alguno.[15] En ese caso, el tribunal deberá "considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida".[16]

De igual forma, jurisprudencialmente se ha reiterado que la "la carencia de méritos puede consistir en la no existencia de una ley que sostenga una reclamación como la que se ha hecho, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la

---

[12] *Íd.*
[13] *Colón Rivera et. al. v. ELA,* 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. Guaynabo,* 187 DPR 811, 821 (2013).
[14] *Ortiz Matías et. al. v. Mora Development,* 187 DPR 649, 652 (2013).
[15] *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Dorante v. Wrangler,* 145 DPR 408, 414 (1998).
[16] *Pressure Vessels PR v. Empire Gas PR.,* 137 DPR 497, 505 (1994).

reclamación."[17] A tenor con lo anterior, la demanda tiene que exponer hechos suficientes que, al ser aceptados como ciertos, establezcan de su faz una reclamación plausible que justifique la concesión de un remedio.[18] A esos efectos, se requiere que toda alegación contenga hechos suficientes que demuestren, sin necesidad de descubrimiento de prueba, que la reclamación es "plausible", ya que los hechos bien alegados satisfacen todos los elementos jurídicos de la causa de acción reclamada.[19]

Dicho lo anterior, en una moción donde se plantee la defensa de que la demanda deja de exponer una reclamación que amerite la concesión de un remedio, si se expusieren materias no contenidas en las alegaciones impugnadas y estas no fueran excluidas por el tribunal, **la moción deberá ser considerada como una solicitud de sentencia sumaria**.[20] **Por lo tanto, estará sujeta a las disposiciones de la Regla 36 de las Reglas de Procedimiento Civil.[21]**

### B.

El Código Civil de Puerto Rico de 1930[22] establece que los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[23] En Puerto Rico rige el principio de libertad de contratación y, como parte de este principio, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[24] Las obligaciones que nacen de los

---

[17] *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305 (1970).
[18] 31 LPRA Ap. V, R. 6.1.
[19] *Íd.*
[20] *Íd.* R. 10.2.
[21] *Íd.* R. 36.
[22] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 et seq. (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 et seq.
[23] 31 LPRA sec. 3371.
[24] *Íd* sec. 3372.

contratos tienen fuerza de ley entre las partes contratantes.[25] Para que un contrato advenga a la vida jurídica y tenga validez se requiere que concurran tres elementos esenciales: el consentimiento de los contratantes, el objeto cierto del contrato y la causa de la obligación que se establezca.[26] Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[27] Los tribunales tienen el deber de velar que los contratos se cumplan y están impedidos de relevar a una parte del cumplimiento de sus obligaciones, cuando el contrato es legal y válido.[28]

De otra parte, nuestro ordenamiento jurídico dispone el principio de libertad de contratación o autonomía de la voluntad. El principio *pacta sunt servanda* establece que los contratantes pueden establecer los pactos, cláusulas y condiciones que tenga por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[29] A pesar de ello, el principio de libertad contractual no es irrestricto y está sujeto a la intervención de los tribunales.[30] Nuestro Tribunal Supremo ha reiterado que los contratos no están sujetos a interpretación cuando los términos son claros y específicos.[31] Si los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[32] Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin

---

[25] 31 LPRA sec. 2994.
[26] *Íd.* sec. 3391.
[27] *Íd.* sec. 3375.
[28] *Mercado Quilichini v. U.C.P.R.*, 143 DPR 610 (1997).
[29] 31 LPRA 3372.
[30] *Mercado Quilichini v. U.C.P.R.*, 143 DPR en la pág. 627.
[31] *Asoc. Res. Los Versalles v. Los Versailles,* 194 DPR 258, 267 (2015).
[32] 31 LPRA 3471.

diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación.[33]

No obstante, cuando no podamos depender del sentido literal de las palabras, debemos recurrir a la intención de las partes al momento de contratar. Es decir, la intención evidente de las partes prevalecerá sobre las palabras, aun cuando estas parecieran contrarias a aquellas.[34] Para analizar la intención de las partes, se deberá considerar los actos anteriores, coetáneos y posteriores al contrato.[35] Por lo tanto, si bien es cierto que hay que considerar la intención de las partes para interpretar los contratos, dicha interpretación tiene que ser cónsona con el principio de buena fe y no puede llevar a resultados incorrectos, absurdos e injustos.[36]

Nuestro Código Civil dispone que cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en las cosas distintas y casos diferentes de aquellos sobre que los interesados se propusieron a contratar.[37] Asimismo, cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse al más adecuado para que produzca el efecto.[38] En ese sentido, el Tribunal Supremo reiteró que efecto más adecuado se refiere a la eficacia de la función económica del contrato y la finalidad que trata de alcanzar.[39] Por lo tanto, cuando una disposición contractual no está reñida con la ley, la moral o el orden público, se le debe dar aplicación integral a lo convenido.[40]

Así también, cuando una palabra pudiera tener diversos sentidos, se debe entender el que sea más favorable conforme a la naturaleza y objeto del contrato.[41] La naturaleza del contrato "se

---

[33] *Corp. Del FSE v. Unión de Médicos*, 170 DPR 443, 450 (2007) citando a *Sucn. Ramírez v. Tribl. Superior*, 81 DPR 357 (1959).
[34] *Asoc. Res. Los Versalles v. Los Versailles,* en la pág*.,* 267; 31 LPRA sec.3471.
[35] 31 LPRA 3472.
[36] *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 727 (2001).
[37] 31 LPRA sec. 3473.
[38] *Íd.* sec. 3474.
[39] *BPPR v. Sunc. Talavera*, 174 DPR 686, 708 (2008).
[40] *Corp. Del FSE v. Unión de Médicos,* 170 DPR en la pág. 451.
[41] 31 LPRA sec. 3476.

refiere al tipo genérico del contrato, por ejemplo, una compraventa o un arrendamiento, mientras que el objeto se refiere a su finalidad".[42]

Al atender el tema de la interpretación de los contratos también se ha de tener consideración el caso particular que presentan los contratos de adhesión. Este tipo de contrato se caracteriza por tener condiciones establecidas que son obra de una sola de las partes, de tal manera que el otro contrayente no presta colaboración alguna a la formación del contenido contractual, quedado así sustituida la ordinaria determinación bilateral del contenido por un simple acto de aceptación o adhesión al esquema contractual predeterminado unilateralmente.[43] En este tipo de contratación acontece un desequilibrio de poder entre las partes que impide un verdadero proceso previo de negociación, lo que representa una reducción al mínimo de la bilateralidad contractual.[44]

**Por lo antes expuesto, en nuestra jurisdicción los contratos de adhesión son tratados de modo excepcional, pues sus cláusulas deben interpretarse liberalmente a favor de la parte contratante económicamente más débil. Por lo tanto, si del texto del contrato de adhesión surgiere alguna duda, esta se resolverá en beneficio de la parte que no participó de su redacción.[45]**

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

---

[42] *BPPR v. Sunc. Talavera,* 174 DPR en la pág. 708 citando a J. Puig Brutau, *Fundamentos de Derecho Civil,* 3ra ed., Editorial Bosch, Barcelona, pág. 17.
[43] *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 176 (2011).
[44] *Suárez Figueroa v. Sabanera Real,* Inc., 173 DPR 694, 711 (2008).
[45] *Echandi Otero v. Stewart Title,* 174 DPR 355, 370 (2008); *Rodríguez de Oller v. T.O.L.I.C.,* 171 DPR 293, 304 (2007).

**III.**

Por estar íntimamente relacionados, discutiremos de forma conjunta los errores señalados. A través de los cuatro (4) errores esbozados la apelante señala que el foro primario erró al adjudicar el caso de forma sumaria y consecuentemente desestimar su reconvención. Le asiste la razón en su planteamiento. Veamos.

El presente recurso surge del *Contrato de Venta, Suministro y Autorización de Uso de Marcas* suscrito por las partes el 2 de julio de 2014 por un término de (8) ocho años. El referido *Contrato*, fue enmendado el 11 de junio de 2015 para establecer que PO&C había realizado mejoras en la Estación de la Sra. Cancel Cardona y a cambio de ello se extendería el término original del *Contrato* por diez (10) años, contados a partir de la fecha del *Contrato* original. De esta forma, se estableció que la culminación del Contrato sería el 2 de julio de 2024. Sin embargo, del *Contrato* surge la siguiente cláusula:

> Art[í]culo 13.3 <u>Renova[c]i[ó]n autom[á]tica</u>. Este Contrato podr[á] ser renovado autom[á]ticamente por un t[é]rmino adicional de cinco (5) años contados a partir de la fecha de termina[c]i[ó]n del mismo, solamente a discreción de Peerless. Peerless notificará su intenci[ó]n de renovar el Contrato con notificaci[ó]n escrita de al menos treinta (30) d[í]as con anterioridad a la fecha de vencimiento del Contrato.

Conforme a lo anterior, la controversia que tenemos ante nuestra consideración se circunscribe a determinar si la ejecución o cumplimiento específico de la cláusula de renovación automática opera automáticamente o si, por el contrario, se encuentra sujeta al consentimiento de las partes a la luz de las diferentes o nuevas circunstancias que pudiera existir al momento de su activación.

Según el derecho expuesto, cuando los términos de un contrato sean claros y específicos estos no estarán sujetos a interpretación judicial. Ahora bien, cuando no se pueda depender del sentido literal de las palabras, como foro revisor debemos recurrir a la intención de las partes al momento de contratar. Al respecto, "cualquiera que

sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquellos sobre que los interesados se propusieron contratar".[46] Del mismo modo, cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse al más adecuado para que produzca el efecto, es decir, a la eficacia del contrato. Cuando una palabra pudiera tener diversos sentidos, se debe entender al que sea más conforme a la naturaleza del contrato, en este caso de un Contrato de Venta, Suministro y Autorización de Uso de Marcas, y al objeto del contrato, es decir, a su finalidad. De lo cual resulta necesario atender al principio de que cuando una disposición contractual no está ceñida con la ley, la moral o el orden público, se le debe dar aplicación integral a lo convenido.[47]

De una lectura de la cláusula se desprende que PO&C tenía la discreción de renovar automáticamente el contrato, previo a una notificación de intención escrita con al menos treinta (30) días de anterioridad al vencimiento del acuerdo. La redacción de la cláusula establece esto con la palabra "podrá". No obstante, la referida prerrogativa de renovación que se le concede a PO&C no obliga automáticamente a la Sra. Cancel Cardona a permanecer, o en este caso, a establecer una nueva relación contractual con ellos. Juzgamos que la cláusula de renovación le provee a PO&C una alternativa de continuación contractual bajo los mismos términos contractuales. Sin embargo, esta opción no opera de forma automática si la otra parte contratante, en este caso, la Sra. Cancel Cardona, no acepta a ello. Por lo tanto, concluimos que la interpretación que hace el foro recurrido es contraria a principio de libertad contractual que promueve nuestro ordenamiento jurídico al

---

[46] 31 LPRA sec. 3473.
[47] *Corp. del FSE v. Unión de Médicos*, 170 DPR en la pág. 451.

pretender obligar a una parte a adherirse a un contrato sin la previa celebración de una vista evidenciaria.

Colegimos que le asiste la razón a la apelante al establecer que, en el caso de autos, no procedía hacer una adjudicación total del mismo de forma sumaria. Consecuentemente, no procedía desestimar la reconvención presentada por esta sin proveerle a la parte apelada la oportunidad de contestar propiamente. Determinamos que la cláusula de renovación automática establecida en el *Contrato* de suscrito por PO&C y la Sra. Cancel Cardona no opera automáticamente y que la misma se encuentra sujeta al consentimiento de las partes a la luz de las diferentes o nuevas circunstancias que pudiera existir al momento de su activación. Le corresponde al Tribunal de Primera Instancia dirimir a través de la evidencia presentada por las partes en un proceso plenario si en el caso de autos procede o no procede renovar el contrato ente las partes. De otra parte, dejamos sin efecto la desestimación de la reconvención presentada por la Sra. Cancel Cardona para se le provea a PO&C la oportunidad de responder propiamente a la misma. Luego de esto, el foro primario estará en mejor posición de atender si procede o no la reclamación hecha por la Sra. Cancel Cardona.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, *revocamos* la *Sentencia* apelada y, dejamos sin efecto la desestimación de la *reconvención* presentada por la Sra. Cancel Cardona. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de conformidad a lo aquí expuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones