ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JUAN ALBERTO CRUZ MORA<br><br>Recurrido<br><br>v.<br><br>TELEVICENTRO OF PUERTO RICO, LLC. h/n/c WAPA TV, CANAL 4; AXIS INSURANCE COMPANY; A, B, C COMPAÑÍAS ASEGURADORAS; FULANO Y MENGANO<br><br>Peticionarios | TA2025CE00452 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: GB2024CV00784<br><br>Sobre: Incumplimiento de contrato; Daños y Perjuicios; Cumplimiento específico de contrato |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2026.

Comparece Televicentro of Puerto Rico, LLC, h/n/c Wapa TV, Canal 4 (en adelante, "Televicentro" o "parte peticionaria"), mediante recurso de *Certiorari* presentado el 15 de septiembre de 2025. Nos solicitó la revocación de la *Resolución Interlocutoria* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (en adelante, "foro primario"), el 26 de junio de 2025. En ese dictamen, el foro primario declaró *No Ha Lugar* a una segunda moción de desestimación presentada por la parte peticionaria.

Por los fundamentos que se expondrán a continuación, se **expide** el auto solicitado, se **revoca** la *Resolución* recurrida y se **desestima** la causa de acción instada en la *Demanda* de epígrafe en contra de Televicentro.

**-I-**

El 8 de septiembre de 2024, el Sr. Juan Alberto Cruz Mora (en adelante, "el señor Cruz Mora" o "recurrido"), presentó una *Demanda* sobre incumplimiento de contrato y daños y perjuicios.[1] En síntesis, alegó que Televicentro había incurrido en incumplimiento de contrato por haber reducido un incentivo de vestimenta o ropa, así como la forma de tramitar el pago de dicho incentivo. Por lo cual, solicitó al foro primario que se le indemnizara por la cantidad de $1,080.00 por concepto del incentivo de ropa no pagado. Además, solicitó $32,448.00 por concepto del ajuste salarial debido al tiempo extra trabajado, $20,000.00 por concepto de angustias mentales ante el incumplimiento del acuerdo de ajuste salarial y una suma adicional del 20% de las cantidades reclamadas por concepto de honoraros de abogado.

Tras varios incidentes procesales, el 17 de diciembre de 2024, Televicentro presentó *Moción de Desestimación por Falta de Jurisdicción.*[2] En la referida moción, arguyó que el foro primario no tenía jurisdicción sobre la demanda instada por el señor Cruz Mora, por entender que sus alegaciones emanaban de un alegado reclamo de práctica ilícita bajo el *National Labor Relations Act,* 29 USC secs. 151-169 (en adelante, "NLRB") predicado en supuestos cambios unilaterales en términos y condiciones de trabajo.

En respuesta, el señor Cruz Mora presentó el 27 de enero de 2025, *Oposición a la Moción de Desestimación por Falta de Jurisdicción,* en la cual sostuvo que la reclamación ante el alegado incumplimiento del acuerdo de transacción no estaba sujeta a la doctrina de campo ocupado, ni requería ser resuelta ante un foro arbitral o administrativo.[3] Lo anterior, por entender que la causa de

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (en adelante, "SUMAC-TPI"), entrada núm. 1, págs. 1-5.
[2] SUMAC-TPI, entrada núm. 16, págs. 1-15.
[3] SUMAC-TPI, entrada núm. 25, págs. 1-14.

acción por incumplimiento del contrato sobre el pago de incentivo de ropa no estaba sujeta a las restricciones establecidas por la NLRB. Además, arguyó que la adjudicación judicial de sus reclamaciones no dependía de la interpretación de la NLRB o de un convenio colectivo.

Luego de evaluar las posturas de las partes, el foro primario emitió una *Resolución Interlocutoria* el 12 de marzo de 2025.[4] Según expresó, Televicentro no presentó suficiente prueba para que el foro primario pudiera determinar si la acción de epígrafe debía ventilarse ante la NLRB o en su defecto, ante el Tribunal de Primera Instancia. Por lo cual, denegó la solicitud de desestimación presentada por Televicentro.

Inconforme, Televicentro presentó una *Segunda Moción de Desestimación.*[5] Mediante esta, sostuvo que las reclamaciones emitidas por parte del señor Cruz Mora estaban bajo el rigor del Convenio Colectivo entre Televicentro of Puerto Rico, LLC (Wapa TV) y Unión de Periodistas, Artes Gráficas y Ramas Anexas, afiliada a "The Newsguild", "Communications Workers of America" (CWA) (AFL-CIO-CLC-FT Local 33225) [UPAGRA], 27 de noviembre de 2023 al 31 de mayo de 2028, (en adelante, "Convenio Colectivo de Televicentro"). En específico, planteó que dichas reclamaciones requerían ser tramitadas bajo el procedimiento de quejas y agravios que dispone el Convenio Colectivo de Televicentro. Agregó que el foro primario carecía de jurisdicción sobre la demanda de epígrafe, debido a que las reclamaciones por parte del señor Cruz Mora debían presentarse ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos y que la misma ya había prescrito. Por lo cual, solicitó nuevamente que se desestimara la demanda de epígrafe.

---

[4] SUMAC-TPI, entrada núm. 28, págs. 1-10.
[5] SUMAC-TPI, entrada núm. 29, págs. 1-9.

Por su parte, el señor Cruz Mora presentó *Oposición a Segunda Moción de Desestimación.*[6] En síntesis, sostuvo que la segunda moción de desestimación presentada por Televicentro era improcedente en derecho, toda vez que sus argumentos fueron previamente evaluados y rechazados por el foro primario. Por ello, solicitó al foro primario que no desestimara la causa de acción presentada.

Así las cosas, el 26 de junio de 2025, el foro primario emitió y notificó la Resolución ante nuestra consideración en la que declaró *No Ha Lugar* la solicitud de desestimación presentada por Televicentro.

Insatisfecho, y tras la denegación de una previa solicitud de reconsideración, el 15 de septiembre de 2025, la parte peticionaria acudió ante este Tribunal mediante el recurso de epígrafe, en el cual señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al no desestimar la Demanda de epígrafe por falta de jurisdicción sobre la materia y no evaluar las alegaciones de la Demanda conforme a la jurisprudencia reciente del Tribunal Supremo en Rodríguez Vázquez v. Hosp. Español Auxilio Mutuo, 2025 TSPR 55.

> Erró el Tribunal de Primera Instancia al concluir que las Mociones de Desestimación presentadas por la parte Peticionaria versaban sobre los mismos argumentos.

Por su parte, el 28 de octubre de 2025, el recurrido presentó su oposición al recurso presentado.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**
**A. Certiorari**

El recurso de *Certiorari* es un mecanismo procesal que le permite a un tribunal de mayor jerarquía revisar las

---

[6] SUMAC-TPI, entrada núm. 33, págs. 1-18.

determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Distinto al recurso de apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de C*ertiorari* de manera discrecional. *García v. Padró,* 165 DPR 324, 334 (2005). Sin embargo, tal discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres González v. Zaragoza Meléndez,* supra, pág. 847.

Para decidir si expide o no el recurso, este tribunal intermedio debe evaluar los recursos de certiorari a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). La referida Regla establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari,* a saber:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que, de ordinario, el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias

extremas y cuando se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022).

**B. Desestimación bajo la Regla 10.2 (1) de Procedimiento Civil**

La Regla 10.2 de las de Procedimiento Civil autoriza al demandado –ya sea en una demanda, reconvención, demanda contra coparte o demanda contra tercero– a presentar una moción de desestimación debidamente fundamentada a esos fines. 32 LPRA Ap. V, R. 10.2. En particular, la precitada regla reconoce los siguientes fundamentos: **(1) falta de jurisdicción sobre la materia**; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022).

En relación con el primer inciso de la Regla 10.2 de Procedimiento Civil, sobre el fundamento de falta de jurisdicción sobre la materia, el Tribunal Supremo ha expuesto lo siguiente:

> Así pues, en el caso de que, en efecto, un tribunal estatal carezca de jurisdicción sobre la materia para atender determinado asunto que haya sido presentado ante sí, el mismo debe ser desestimado sin entrar en los méritos de la controversia. Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855-856 (2009); González Santos v. Bourns P.R., Inc., 125 DPR 48, 63 (1989). La Regla 10.2 de Procedimiento Civil, supra, puede ser el vehículo procesal para adelantar tales fines.

*Rodríguez Vázquez, Santana Marrero v. Hospital Español Auxilio Mutuo*, 2025 TSPR 55, págs. 9-10; 215 DPR ___

**C. Convenio Colectivo y Arbitraje**

En nuestro ordenamiento jurídico, la negociación colectiva está revestida de un gran interés público ya que constituye un medio eficaz para promover la estabilidad y paz industrial. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros*, 2025 TSPR 7, págs. 36-37; 215 DPR __ (2025).; *C.O.P.R. v. S.P.U.,* 181 DPR 299, 312 (2011). Por ello, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, sino que se deben considerar instrumentos que crean relaciones e intereses a la luz de la política pública laboral estatal. *AAA v. UIA,* 199 DPR 638, 648 (2018). Según ha sido interpretado, el convenio colectivo es "el acuerdo por escrito entre una organización obrera y un patrono en que se especifican los términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que surjan durante la vigencia del contrato". *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros*, supra, pág. 36; *C.O.P.R. v. S.P.U.*, supra, pág. 319. Por ello, al ser contratos, estos se rigen por las disposiciones de los contratos del Código Civil y, por lo tanto, les aplican las normas de interpretación contractual.

Conforme a lo antes dispuesto, los términos de un contrato son claros cuando son suficientes en contenido para ser atendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (citando a *Sucesión Ramírez v. Tribunal Superior*, 81 DPR 357 (1959)). Por tanto, si los términos de un contrato o de una cláusula contractual dentro de un convenio colectivo son suficientemente claros como para entender lo que se haya pactado, hay que atenerse al sentido literal de las palabras. Por lo cual, los tribunales no pueden entrar a dirimir sobre

lo que presuntamente intentaron pactar las partes al momento de contratar. *Id.*

Como norma general, en los convenios colectivos las partes establecen voluntariamente un sistema de quejas y agravios. *C.O.P.R. v. S.P.U.,* supra, pág. 326. A su vez, en el convenio colectivo las partes pueden pactar que sus reclamos se canalicen mediante un proceso de arbitraje. En tales casos, tanto las uniones como los patronos sustituyen a los tribunales por los árbitros. *Id; Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* supra, pág. 27.

A tenor con lo anterior, debemos mencionar que en Puerto Rico se reconoce una política pública a favor del arbitraje obrero-patronal. *UGT v. Centro Médico del Turabo,* 208 DPR 944, 955 (2022). El arbitraje juega un papel fundamental para resolver pacíficamente las disputas obrero-patronales que surjan de la aplicación e interpretación de un convenio. *Id.* Por ello, el árbitro desempeña la función de adjudicador en un litigio judicial. *C.O.P.R. v. S.P.U,* supra, pág. 322. Por tal motivo, los procedimientos de arbitraje y los laudos están revestidos con gran deferencia frente a los tribunales de justicia. *UGT v. Centro Médico del Turabo,* supra, pág. 955.

Igualmente, nuestro más Alto Foro ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso. *Landrau Cabezudo y otros v. Autoridad de los Puertos de Puerto Rico y otros,* supra, pág. 27; *AAA v. UIA,* 200 DPR 903, 922 (2018). Cónsono con ello, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del*

*trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

Por otro lado, en el proceso de arbitraje "las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión". *Indulac v. Unión*, 207 DPR 279, 293 (2021), citando a D. Fernández Quiñones, *El arbitraje obrero-patronal*, Colombia, Ed. Forum, 2000, pág. 9. Así, este procedimiento tiene un efecto excluyente al proceso judicial ya que constituye un contrato que priva a los jueces y tribunales de la facultad de conocer, en primera instancia, los conflictos o controversias sometidas a arbitraje. *Id.*

Finalmente, el rol de los tribunales al revisar el laudo emitido por un árbitro, como regla general, consiste en examinar si ocurre una de las siguientes instancias: 1) la existencia de fraude, (2) conducta impropia, (3) falta del debido proceso de ley, (4) violación a la política pública, (5) falta de jurisdicción *UGT v. HIMA* 212 DPR 492, 500 (2023).

En lo concerniente al asunto que nos ocupa, el Artículo 19 del Convenio Colectivo de Televicentro establece el procedimiento de quejas y agravios. En particular, dispone lo siguiente:

> A. La Unión y la Compañía designarán un comité de su propia selección para discutir cualquier querella(s) en el segundo paso que serán definidas **como cualquier asunto que surja de la interpretación, aplicación, administración, disputa, conflicto o alegada violación a las disposiciones expresas de este Convenio** o con respecto a cualquier acción disciplinaria, incluyendo la suspensión o despido de uno o más empleados, **o asuntos que afecten las relaciones entre los empleados y la Compañía.** Dicha cuestión será resuelta de la siguiente forma: (Énfasis nuestro).

> B. En cada caso en que una querella llegue al segundo paso, la Unión y la Compañía notificarán por escrito los nombres de los miembros del Comité de Quejas y Agravios. Los representantes de la Compañía y la Unión en el Comité de Quejas y Agravios serán limitados a tres. Estos límites pueden ser cambiados por acuerdo de las partes, pero no habrá límite en cuanto al número de testigos de la Unión, entendiéndose que la Unión utilizará un testigo a la vez y los otros continuarán desempeñando las funciones de trabajo hasta ser llamados a declarar en el segundo paso de Quejas y Agravios.

1. PRIMER PASO:

El empleado agraviado y/o el delegado presentará por escrito la querella al supervisor inmediato y discutirá la querella con su supervisor inmediato y el jefe del departamento del empleado agraviado sobre cualquier asunto que surja bajo la Sección A de este Artículo dentro del término de diez (10) días laborables de haber ocurrido el incidente o agravio, o dentro del término de diez (10) días laborables de haber tenido el empleado o el delegado conocimiento, o desde que debieron haber tenido conocimiento del incidente o agravio. Dentro de tres (3) días laborables después de presentarse la querella o queja, el supervisor inmediato y el Jefe del Departamento se reunirán con el delegado y/o el empleado agraviado. El supervisor y el Jefe de Departamento darán una contestación por escrito dentro de los siguientes cuatro (4) días laborables después de reunirse con el delegado y/o empleado agraviado. Las partes podrán extender los períodos de tiempo aquí especificados por acuerdo mutuo por escrito.

En caso que el empleado procese su querella sin la intervención de un delegado, el empleado releva a la Unión de cualquier responsabilidad si la querella se convierte en no arbitrable por su conducta haber causado un incumplimiento de algún término de tiempo.

2. SEGUNDO PASO:

De no llegarse a un acuerdo o resolverse la querella o queja dentro del primer paso, la Unión podrá someter por escrito la querella al Comité de Quejas y Agravios dentro del término de cuatro (4) días laborables desde la fecha en que la Compañía dio su contestación en el primer paso. El Comité de Quejas y Agravios de la Unión y la Compañía se reunirá dentro del término de cuatro (4) días laborables entre 8:00 A.M. y 5:00 P.M., de lunes a viernes, excepto días feriados, para discutir dicha querella o queja. El Comité de Quejas y Agravios dará su contestación por escrito dentro del término de cuatro (4) días laborables; sin embargo, dichos términos podrán ser variados por mutuo acuerdo por escrito.

3. TERCER PASO:

A. De no llegarse a un acuerdo o resolverse la querella o queja dentro del segundo paso, la Unión podrá someter cualquier asunto que surja bajo la Sección A de este Artículo a arbitraje no más tarde de quince (15) días laborables luego de haber recibido la contestación del segundo paso que antecede.

B. La selección del árbitro se hará por mutuo acuerdo en la siguiente manera:

Un **árbitro será seleccionado de una terna designada por el Secretario del Departamento del Trabajo y Recursos Humanos de Puerto Rico**, o su representante, haciendo la primera eliminación del árbitro la Unión. Luego la Compañía eliminará uno de los dos nombres restantes. El nombre no eliminado será el árbitro para la querella. (Énfasis nuestro).

C. El árbitro no tendrá jurisdicción para alterar, enmendar o modificar las disposiciones de este Convenio.

D. El árbitro deberá decidir los casos conforme la ley y/o la jurisprudencia aplicable y el Convenio de tal forma que el laudo que emita el árbitro deberá ser conforme a derecho. Excepto en casos que el laudo no sea conforme a derecho, el laudo será final y obligatorio para las partes.

H. **De no seguirse los límites de tiempo aquí establecidos, se considerará el asunto cerrado.** Las partes

podrán, mediante estipulación escrita, extender los límites de tiempo especificados en este Artículo. (Énfasis nuestro).

I. La renovación de este Convenio no estará sujeta a arbitraje.

M. En caso de reclamaciones de salarios los términos prescriptivos aplicables serán los que dispone la ley conforme a derecho y no los que dispone este Convenio.[7] (Énfasis súplido).

Por otro lado, el Artículo 11 del convenio de referencia regula las horas de trabajo y sobretiempo. En específico el inciso B (1) dispone lo siguiente:

Para propósitos de cómputo de horas extras, la jornada regular diaria consistirá de ocho (8) horas laborables en un período de veinticuatro (24) horas consecutivas.

En el caso de los empleados de la Unidad Apropiada contratados a partir del 14 de julio de 2017, las horas extra diarias quedarán definidas como aquellas trabajadas en exceso de ocho (8) horas durante cualquier día calendario, por día calendario se entenderán las veinticuatro horas que transcurren desde las 12:01AM hasta las 12:00PM del mismo día. Se aclara, sin embargo, que será una condición para la aplicación de este ciclo de veinticuatro (24) horas para el cómputo de las horas extra, que el empleado disfrute un mínimo de ocho (8) horas de descanso entre turnos de trabajo.[8]

Por su parte, el Artículo 23 inciso 55 del precitado convenio reza como sigue:

La Compañía continuará pagando trimestralmente a los reporteros y reporteros anclas un "clothing allowance" para la compra de ropa, zapatos, accesorios, "laundry", maquillajes compatibles con sus funciones y los estándares de la industria, sujeto a las deducciones aplicables. La cantidad mínima para reporteros será de seiscientos ($600.00) dólares mensuales netos, sujeta a las deducciones aplicables.[9]

En síntesis, cuando surja una controversia sobre cualquier asunto dispuesto en el Convenio Colectivo de Televicentro, se debe seguir un procedimiento de quejas y agravios y en caso de no poderse llegar a un acuerdo se llevará a cabo un proceso de arbitraje. En consecuencia, si en el término dispuesto en el referido

---

[7] Convenio Colectivo entre Televicentro of Puerto Rico, LLC (Wapa TV) y Unión de Periodistas, Artes Gráficas y Ramas Anexas, afiliada a "The Newsguild", "Communications Workers of America" (CWA) (AFL-CIO-CLC-FT Local 33225) [UPAGRA], 27 de noviembre de 2023 al 31 de mayo de 2028, Artículo 19, págs. 60-63.
[8] *Id.*, pág. 33.
[9] *Id.*, pág. 76.

convenio, no se cumple con el procedimiento de quejas y agravios se considerará el asunto cerrado.

**-III-**

En el presente caso, Televicentro señala que el foro primario incidió al no desestimar la demanda de epígrafe por falta de jurisdicción sobre la materia y por concluir que las mociones de desestimación presentadas por la parte peticionaria versaban sobre los mismos argumentos. En cambio, el señor Cruz Mora plantea ante nos, en síntesis, que el foro primario tiene jurisdicción, toda vez que las reclamaciones del recurrido emanan de acuerdos contractuales privados ajenos al convenio colectivo y a la jurisdicción del NLRB.

Comenzamos atendiendo el segundo error de la parte peticionaria, en el cual plantea que el foro primario incidió al concluir que las mociones de desestimación presentadas por Televicentro versaban sobre los mismos asuntos. Si bien es cierto, que mediante las referidas mociones Televicentro solicitó la desestimación del pleito por entender que el foro primario carecía de jurisdicción, los fundamentos fueron distintos. En la primera moción de desestimación la parte peticionaria indicó que el foro con jurisdicción era del NLRB, mientras que en la segunda moción planteó que el foro primario carecía de jurisdicción debido a que el asunto en controversia debió atenderse bajo el proceso de quejas y agravios dispuesto en el Convenio Colectivo de Televicentro, el cual culmina con un procedimiento de arbitraje.

Luego de examinar el expediente, concluimos que el peticionario tiene la razón. Las solicitudes de desestimación se amparan en fundamentos distintos. Por tanto, el foro primario incidió al denegar la desestimación bajo el fundamento de que eran planteamientos atendidos previamente.

Por otro lado, pasamos a evaluar la controversia referente a si el foro primario carece de jurisdicción debido a que las controversias del presente caso no fueron tramitadas mediante el proceso de quejas y agravios del Convenio Colectivo en cuestión, así como por la falta de arbitraje.

Según reseñamos previamente, el Artículo 19 del Convenio de Televicentro dispone que se atenderá mediante el proceso de quejas y agravios cualquier asunto que surja de la interpretación, aplicación, administración, disputa, conflicto o alegada violación a las disposiciones expresas del convenio, acción disciplinaria, suspensión o despido. Es, sin lugar a duda, una cláusula tan abarcadora como para sujetar al proceso de quejas y agravios cualquier desavenencia que afecte las relaciones entre los empleados unionados y Televicentro. De no llegarse a un acuerdo, el asunto debe ser sometido ante el proceso de arbitraje. El convenio también dispone que, de no seguir los términos establecidos para someter las reclamaciones, se considerará el asunto cerrado.

En el presente caso el señor Cruz Mora instó una demanda reclamando un incumplimiento respecto al pago de gastos de vestimenta (*clothing allowance*) y el pago de horas extras. Como reseñamos previamente, ambos asuntos están expresamente recogidos en los Artículos 11 (horas de trabajo y tiempo extra) y 23 (*clothing allowance*) del Convenio Colectivo. Asimismo, es evidente que ambos asuntos requieren la aplicación e interpretación del Convenio Colectivo que contiene la base de derechos de ambas partes para los asuntos en cuestión. Así pues, concluimos que el proceso adecuado para atender ambos asuntos era el proceso de quejas y agravios establecido en el Artículo 19 del Convenio Colectivo, el cual podría culminar en un proceso de arbitraje.

Vale señalar que el argumento del señor Cruz Mora a los efectos de que no le es de aplicación el convenio colectivo pues, a su

entender, sus reclamos provienen de acuerdos privados, no nos persuade. Además, es claro que los reclamos del señor Cruz Mora constituyen una desavenencia que afecta las relaciones entre el empleado y su patrono, por lo que le es de aplicabilidad el proceso de quejas y agravios pactado.

En consecuencia, justipreciamos que el Tribunal de Primera Instancia no es el foro adecuado para atender el reclamo instado por el recurrido. El señor Cruz Mora debió seguir el procedimiento de quejas y agravios y, de no llegar a un acuerdo con su patrono, entonces debió someter su caso ante un árbitro a ser seleccionado por el Secretario del Departamento del Trabajo y Recursos Humanos. Sin embargo, del expediente no surge que haya hecho el procedimiento correspondiente, sino que decidió presentar su reclamo ante el Tribunal de Primera Instancia. Al así proceder, no siguió el procedimiento dispuesto en el Convenio Colectivo de Televicentro, lo que equivale a que su reclamo se estime como un asunto cerrado entre las partes.

Además, tal cual hemos expresado, el hecho de que el asunto en controversia le sea aplicable el proceso de arbitraje, provoca la falta de jurisdicción de los tribunales. Véase, *Indulac v. Unión*, supra, pág. 293. Nuestra autoridad para intervenir en este tipo de casos está limitada, como regla general, revisar si ha ocurrido fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública o falta de jurisdicción del árbitro. *UGT v. HIMA,* supra, pág. 500. Al ni siquiera estar planteada alguna de las excepciones antes expuestas, debemos concluir que el foro primario carece de jurisdicción para atender la controversia de epígrafe.

Por todo lo anterior, concluimos que el foro primario cometió un claro error al declarar *No Ha Lugar* las mociones de desestimación presentadas por la parte peticionaria y por adquirir una jurisdicción que no le correspondía.

**-IV-**

Por los fundamentos previamente expuestos, se **expide** el recurso solicitado y se **revoca** la *Resolución* recurrida. Consecuentemente, conforme a la Regla 10.2 (1) de Procedimiento Civil, *supra,* se **desestima** la *Demanda* de epígrafe contra de Televicentro.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones